UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN C. CAPP, On Behalf Of Himself; N.C., A Minor By And Through Their Guardian Ad Litem; J.C., A Minor By And Through Their Guardian Ad Litem,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO; SAN DIEGO HEALTH AND HUMAN SERVICES AGENCY; KATHY JACKSON; BOB PROKESCH; JOHANNA FIRTH; DOES 1 to 50, Inclusive,<br><br>Defendants. | Case No.: 16-CV-2870-AJB-MDD<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>(Doc. Nos. 5, 13) |

Presently before the Court are two motions to dismiss for failure to state a claim, the first filed by Defendants Johanna Firth ("Firth"), Bob Prokesch ("Prokesch"), and the County of San Diego ("County"), and the second filed by Defendant Kathy Jackson ("Jackson") (collectively, "Defendants"). (Doc. Nos. 5, 13.) Plaintiffs Jonathan C. Capp ("Capp"), N.C., and J.C. (collectively, "Plaintiffs") oppose the motions. (Doc. Nos. 10, 16.) Having reviewed the parties' moving papers and controlling legal authority, the Court

1

finds the matter suitable for decision on the papers and without oral argument pursuant to Local Civil Rule 7.1.d.1. Accordingly, the motion hearing date currently set for ***April 27, 2017, at 2:00 p.m.*** is hereby **VACATED**. For the reasons set forth below, the Court **GRANTS** Defendants' motions.

## BACKGROUND

This dispute arises from allegations that Capp emotionally abused his children, had a substance abuse problem, and drove his car with his children in it while under the influence of alcohol. The County Health and Human Services Agency ("Agency") received these allegations from an anonymous third party, but Capp suggests his ex-wife's parents reported these allegations to the County. (Doc. No. 1 ¶¶16–17, 20, 33, 36.)

Upon receiving these allegations, the County sent social worker Firth to interview N.C. and J.C. at school without Capp's consent. (*Id.* ¶ 18.) Firth also interviewed Capp at his home on August 26, 2015. (*Id.* ¶¶ 17, 19.) On August 28, 2015, Capp's ex-wife's attorney informed Capp that his ex-wife was seeking full custody of N.C. and J.C., and that Firth recommended the ex-wife create a written agreement that she would file an emergency custody order because the children felt unsafe in his care. (*Id.* ¶¶ 24–25.) Capp's ex-wife filed an ex parte motion on August 31, 2015, based on Firth's recommendation, but the family court denied the motion on September 2, 2015, and dismissed her motion to modify custody in her favor. (*Id.* ¶¶ 27–28; *see* Doc. No. 1-3.)

After receiving the ex parte application, Capp contacted Jackson, an Agency supervisor, who assured Capp that procedures would be followed and the case against him closed. (Doc. No. 1 ¶ 30.) On September 8, 2015, social worker Prokesch interviewed Capp regarding the allegations. (*Id.* ¶ 32.)

During the span of this investigation, N.C. and J.C.'s maternal grandparents kept Capp from seeing N.C. and J.C. and physically prevented him from picking them up from school. (*Id.* ¶¶ 35, 37.) On September 24, 2015, the family court prohibited the maternal grandparents from seeing the children and nearly revoked the ex-wife's custody. (*Id.* ¶¶ 39–40.) The family court also confirmed that the Agency determined the emotional abuse

allegations against Capp were inconclusive, which Jackson, Prokesch, and Firth had confirmed on September 18, 2015. (*Id.* ¶¶ 41–42.) On October 15, 2015, Capp received a notification from Firth that the child abuse investigation against him was officially closed, but that he had been subsequently placed on the Child Abuse Central Index ("CACI").[1] (*Id.* ¶¶ 43–44; Doc. No. 1-6.)

Capp called the Agency to protest his CACI listing, and Ana Daugherty ("Daugherty"), a policy analyst with Child Protective Services ("CPS"), informed Capp she was investigating his complaint. (Doc. No. 1 ¶¶ 47, 49.) On October 30, 2015, Daugherty informed Capp that she would recommend he be taken off the CACI. (*Id.* ¶ 51.) On November 23, 2015, Daugherty told Capp the allegations against him were downgraded to "unfounded" with the exception of the emotional abuse allegation against N.C., which was determined inconclusive. (*Id.* ¶¶ 52–53; *see* Doc. No. 1-9.) Daugherty also informed Capp that he was never actually placed on the CACI and that the mistake was due to a clerical error, of which he received written confirmation on February 2, 2016. (Doc. No. 1 ¶¶ 54–55.)

Plaintiffs instituted this action by filing the operative complaint on November 22, 2016, alleging a violation of their First, Fourth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 against Firth, Prokesch, and Jackson. (Doc. No. 1 ¶¶ 71–77.) Plaintiffs also allege municipal liability pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against the County. (*Id.* ¶¶ 78–83.) Firth, Prokesch, and the County filed a motion to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)[2] on January 11, 2017. (Doc. No. 5.) On February 16, 2017,

---

[1] The complaint states Capp "heard nothing from Defendants until around October, 15, **2016** when he received two letters from" the Agency. (Doc. No. 1 ¶ 43 (emphasis added).) However, the letter attached as Exhibit E is dated "10/8/**2015**." (Doc. No. 1-6 at 2 (emphasis added).) The Court assumes Capp received the letter in 2015, but this must be clarified in an amended complaint.

[2] All references to "Rule" are to the Federal Rules of Civil Procedure.

Jackson also filed a Rule 12(b)(6) motion. (Doc. No. 13.) The motions have been fully briefed. (Doc. Nos. 10, 12, 16, 17.) This order follows.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Plaintiffs must also plead, however, "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true "merely because they are cast in the form of factual allegations." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## DISCUSSION

### *I. Violation of Civil Rights Claim: 42 U.S.C. § 1983 and Qualified Immunity*

Defendants move for dismissal on the basis that Plaintiffs state no violation of their First, Fourth, or Fourteenth Amendment rights on which to hinge a § 1983 action, and even

4

16-CV-2870-AJB-MDD

if they did, Defendants are immune from such claims. (Doc. No. 5-1 at 6–8.)[3] The Court will consider each constitutional violation in turn.

42 U.S.C. § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). "To state a claim under [42 U.S.C.] § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). To act under color of state law, a defendant must exercise "power 'possessed by virtue of state law," and his or her actions were "made possible 'only because the wrongdoer is clothed with the authority of state law.'" *Id.* at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An official's qualified immunity generally turns on the objective legal reasonableness of his actions, which are assessed in light of the clearly established legal rules in place at the time his actions were taken. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quoting *Harlow*, 457 U.S. at 562). A right is "clearly established" if it is "sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.'" *Reichle v. Howards*, 566 U.S. 658, 132 S. Ct. 2088, 2093 (2012) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (internal quotation marks omitted). The Court must therefore decide whether a reasonable

---

[3] Because Jackson makes essentially the same arguments contained in her co-defendants' motion to dismiss, the Court will cite only to the motion filed on January 11, 2017, and the corresponding moving papers.

officer could have believed that the conduct at issue was lawful, in light of both clearly established law and the information the officer possessed at the time he acted. *See Anderson*, 483 U.S. at 639–41. Qualified immunity is "defeated if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury." *Harlow*, 457 U.S. at 815 (internal quotation marks, emphasis, and alterations omitted).

There are two prongs to the qualified immunity analysis: (1) whether the plaintiff alleged the deprivation of a constitutional right; and (2) whether that right was "clearly established" so as to deny qualified immunity. *See al-Kidd*, 563 U.S. at 735. It is within the district court's sound discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### *i. First Amendment Violation*

Defendants argue Plaintiffs fail to state a First Amendment violation because Plaintiffs do not sufficiently allege facts that the social workers retaliated against any constitutionally protected activity. (Doc. No. 5-1 at 6.) Plaintiffs retort that the social workers chilled their rights to free speech and that Defendants' retaliation was flagrant because there was no credible evidence of child abuse by Capp to warrant an investigation. (Doc. No. 10 at 11–12.)

To state a retaliation claim under the First Amendment, Plaintiffs must allege that (1) they were engaged in a constitutionally protected activity; (2) Defendants' actions would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the protected activity was a substantial or motivating factor in Defendants' conduct. *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (quoting *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)).

The Court finds that Plaintiffs fail on the first element. Even accepting as true the contention that Defendants engaged in retaliatory conduct against Plaintiffs, the complaint

fails to identify any constitutionally protected activity that was subjected to Defendants' purported retaliation. For this basic reason, the Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiffs' § 1983 claim to the extent it is predicated on a First Amendment violation.

### ii. *Fourth Amendment Violation*

Defendants argue that Plaintiffs have failed to plead a violation of the Fourth Amendment because they do not plead they were searched or that the children were removed from Capp's custody. (Doc. No. 5-1 at 7–8.) Defendants further argue that even if the social workers' interview of N.C. and J.C. at their school violated the children's Fourth Amendment rights, this right was not clearly established at the time of the interview, and Defendants are accordingly entitled to qualified immunity. (*Id.* at 8.) Plaintiffs respond that the social workers' interview of the children was unconstitutional in light of the Ninth Circuit's holding in *Camreta v. Greene ("Greene I")*, 588 F.3d 1011 (9th Cir. 2009).[4] (Doc. No. 10 at 15–16.) Defendants respond that *Greene I* cannot clearly establish a right because the Supreme Court vacated *Greene I*'s Fourth Amendment holding as moot in *Camreta v. Greene ("Greene II")*, 563 U.S. 692 (2011); *see Greene v. Camreta*, 661 F.3d 1201, 1201–02 (9th Cir. 2011) (acknowledging vacatur, and vacating and remanding for further proceedings). (Doc. No. 12 at 3.)

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" "A

---

[4] Plaintiffs also assert that the interview of the children was unlawful under California law. (Doc. No. 10 at 16.) However, the violation of a state law cannot serve as the predicate for a § 1983 action. *See West*, 487 U.S. at 48 ("To state a claim under § 1983, a plaintiff must allege *the violation of a right secured by the Constitution and laws of the United States*, and must show that the alleged deprivation was committed by a person acting under color of state law." (emphasis added)); *Baker*, 443 U.S. at 144 n.3 (stating that § 1983 "is not itself a source of substantive rights, but a method for vindicating *federal rights* elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes" (emphasis added)).

'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *Soldal v. Cook Cnty.*, 506 U.S. 56, 63 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). A seizure of the person occurs when, "taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Florida v. Bostick*, 501 U.S. 429, 437 (1991) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569 (1988)).

Determining the reasonableness of a seizure entails a careful balancing of "the nature and quality of the intrusion on an individual's Fourth Amendment interests against the countervailing governmental interests at stake." *United States v. Ankeny*, 502 F.3d 829, 836 (9th Cir. 2007) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "A seizure becomes unlawful when it is 'more intrusive than necessary.'" *Ganwich v. Knapp*, 319 F.3d 1115, 1122 (9th Cir. 2003) (quoting *Florida v. Royer*, 460 U.S. 491, 504 (1983)). The reasonableness of the seizure "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Thus, the Court examines whether the totality of the circumstances, "viewed objectively, justify [the challenged] action." *Scott v. United States*, 436 U.S. 128, 138 (1978).

Even assuming the social workers' interview of N.C. and J.C. constituted a seizure within the meaning of the Fourth Amendment, the Court finds Defendants are entitled to qualified immunity because the right at issue was not clearly established at the time of the interview. In *Greene II*, "the Supreme Court ultimately dismissed the action as moot and specifically vacated 'the Ninth Circuit's ruling addressing the merits of the Fourth Amendment issue' and the qualified immunity analysis." *McManus v. Cnty. of San Diego*, No. 15cv0138 JM(RBB), 2016 WL 3552007, at * 4 (S.D. Cal. June 30, 2016) (quoting *Greene II*, 563 U.S. at 713–14). "Moreover, the Supreme Court expressly noted that the point of the vacatur was to prevent *Greene* [*I*] from spawning any legal consequences. Accordingly, this authority does not lend support to Plaintiff[s'] legal theory" that Firth's in-school interview of N.C. and J.C. during the course of investigating a child abuse claim,

absent a warrant, parental consent, or exigent circumstance, constitutes a Fourth Amendment violation. *Id.*

While the Supreme Court does "not require a case directly on point" in order for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. It is evident to the Court that a vacated opinion does not meet this standard. This is all the more apparent in light of other district court opinions that have concluded similarly. *See, e.g.*, *McManus*, 2016 WL 3552007, at *4 (finding *Greene I* did "not lend support to Plaintiff's legal theory that parental rights are violated whenever a 14-year-old minor is removed from school and interviewed in the course of a child abuse investigation without the parent's consent, a court order, or exigent circumstances"); *Mann v. Cnty. of San Diego*, No. 3:11-cv-0708-GPC-BGS, 2013 WL 4046642, at *10 (S.D. Cal. Aug. 8, 2013) (finding defendants entitled to qualified immunity where plaintiffs relied solely on *Greene I* for the proposition that "a social worker's brief, voluntary interview of a suspected child-abuse victim at school . . . violates the Constitution").

Accordingly, the Court finds Defendants are entitled to qualified immunity in the absence of binding authority establishing that a social worker's interview of a child at school violates the child's Fourth Amendment rights. The Court therefore **GRANTS** Defendants' motions and **DISMISSES** Plaintiffs' § 1983 claim to the extent it is predicated on a Fourth Amendment violation.

### iii. *Fourteenth Amendment Violation*

Defendants argue Plaintiffs have failed to state a Fourteenth Amendment violation because N.C. and J.C. were not actually, physically removed from Capp's care. (Doc. No. 5-1 at 8.) Plaintiffs respond that the right to familial association extends not only to cases where children are physically removed, but "even to cases where the parents *and* their children suffer from the abuse and stigmatization of a child abuse investigation . . . ." (Doc. No. 10 at 10.) Plaintiffs contend they have sufficiently stated such a disruption to their familial bonds by alleging Defendants threatened and coerced Capp's ex-wife into filing

9

16-CV-2870-AJB-MDD

an ex parte application to change custody and violate custody orders; fabricated allegations of child abuse against Capp; and placed Capp on the CACI. (*Id.* at 11.)

"Parents and children have a well-elaborated constitutional right to live together without governmental interference." *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000); *see also Burke v. Cnty. of Alameda*, 586 F.3d 725, 733 (9th Cir. 2009) (extending this protection of parental rights to parents who have only legal custody and no physical custody). This right "is an essential liberty interest protected by the Fourteenth Amendment's guarantee that parents and children will not be separated by the state without due process of law except in an emergency." *Burke*, 586 F.3d at 731 (quoting *Wallis*, 202 F.3d at 1136).

To allege a Fourteenth Amendment violation premised on the unwarranted interference with familial rights, Plaintiffs must demonstrate that Defendants' actions were so egregious or ill-conceived that it shocks the conscious. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). "[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Id.* at 848. Rather, to impose liability for violation of an individual due process right, the official's actions must "shock[] the conscience." *Id.* at 846.

The Court finds Plaintiffs have not stated a cognizable Fourteenth Amendment violation. The basic issue with their claim is their failure to identify a familial right with which Defendants have purportedly interfered. While the allegation that Defendants coerced and threatened Capp's ex-wife into seeking a change of custody is concerning, N.C. and J.C. were never removed from Capp's care, nor were Capp's custodial rights otherwise modified. In fact, it was the ex-wife who nearly lost physical custody of the children. (Doc. No. 1 ¶ 40.)

To the extent Capp asserts a Fourteenth Amendment violation predicated on his CACI listing, this also fails. The Fourteenth Amendment guarantees procedural safeguards against the alteration or extinguishment of a legal status combined with the injury resulting from defamation. *Paul v. Davis*, 424 U.S. 693, 694, 701–10 (1976); *Hart v. Parks*, 450

10

F.3d 1059, 1069–70 (9th Cir. 2006) (referring to the "stigma-plus" test). Thus, an injury to reputation by itself does not constitute a protected liberty interest under the Fourteenth Amendment. *Hart*, 450 F.3d at 1069. Rather, the plaintiff must also show that, as a result of the official's conduct, "a right or status previously recognized by state law was distinctly altered or extinguished." *Paul*, 424 U.S. at 711.

The Court finds Capp's listing on the CACI does not state a Fourteenth Amendment violation. The issues with Capp's CACI listing are twofold. First, Capp was never actually listed on the CACI, but rather was only under the impression he was listed for two weeks before being informed otherwise. (Doc. No. 1 ¶¶ 54–55.) Where a plaintiff wrongfully perceived he was placed on the CACI or believed he was "in jeopardy" of being placed on the CACI, a constitutional violation is conjectural at best. *See Buckheit v. Dennis*, No. C 09-5000 JCS, 2012 WL 1166077, at *17–18 (N.D. Cal. Apr. 6, 2012) (granting summary judgment to defendants on plaintiff's § 1983 claim where plaintiff was never placed on the CACI).

Second, even if Capp was actually listed on the CACI, he does not identify a tangible harm he suffered as a result. Certainly, "being falsely named as a suspected child abuser on an official government index is defamatory." *Miller v. California*, 355 F.3d 1172, 1178 (9th Cir. 2004). However, the complaint is silent on whether any of Capp's rights or status were "distinctly altered or extinguished" as a result. Absent such allegations, no Fourteenth Amendment violation exists. *Hart*, 450 F.3d at 1069–70.

Accordingly, the Court **GRANTS** Defendants' motions and **DISMISSES** Plaintiffs' § 1983 claim to the extent it is predicated on a Fourteenth Amendment violation.

*II. Monell Claim: Municipal Liability*

Defendants also move to dismiss Plaintiffs' *Monell* claim because the complaint does not list any specific policies or practices that could have caused a rights violation, but rather merely includes a "laundry list of general policies and practices in a conclusory way[.]" (Doc. No. 5-1 at 10.) Plaintiffs oppose the motion, asserting that the County admitted that "some of the policies, procedures, and/or practices have not been

11

appropriately followed," therefore validating the *Monell* claims in the complaint. (Doc. No. 10 at 17 (quoting Doc. No. 1-9 at 2).) Defendants retort that a *Monell* claim is pleaded only when a plaintiff alleges a policy, standing alone, violates an individual's rights, not when a sound policy is not being followed by an employee. (Doc. No. 12 at 3–4.)

Municipalities, their agents, and their supervisory personnel may be held liable for deprivations of constitutional rights resulting from their formal policies or customs. *Monell*, 436 U.S. at 691–95. However, "[a] government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Daugherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694).

"In this circuit, a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" *Karim-Panahi v. L.A. Police Dept.*, 839 F.2d 621, 624 (9th Cir. 1988) (quoting *Shah v. Cnty. of Los Angeles*, 797 F.2d 743, 747 (9th Cir. 1986)). Notwithstanding this treatment, however, a plaintiff is not absolved of his obligation to meet the plausibility requirements under *Twombly*. *See Dougherty*, 654 F.3d at 900–01.

Plaintiffs' *Monell* claim fails for two reasons. First, as addressed in the preceding sections of this order, Plaintiffs fail to allege the deprivation of a constitutional right. *See Id.* at 900 (listing as one element of a *Monell* claim that "the plaintiff possessed a constitutional right of which she was deprived" (alterations omitted)). Second, Plaintiffs fail to identify a policy or custom of practice on which to hinge the theory of municipal liability. In their complaint, Plaintiffs list what they believe to be several unjust policies that were allegedly followed, such as "using fabricated evidence, undue influence, coercion, and/or duress to cause a parent to seek custody from the other"; "detaining and interviewing children without exigent circumstances, . . . court order or consent of their parent"; "using false and misleading information . . . in their investigation of child abuse referrals"; and "retaliating against citizens who question their authority[.]" (Doc. No. 1 ¶

78.) However, this recitation fails to identify the specific policy that allegedly caused Plaintiffs' harm. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) ("[I]n *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." (citing *Monell*, 436 U.S. at 694)).

Plaintiffs point to Exhibit H, (Doc. No. 1-9), as support for the County's *Monell* liability, a document in which the County "admit[ed] that 'some of the policies, procedures and/or practices have not been appropriately followed,'" (Doc. No. 10 at 17). However, the failure of individual employees to follow County policies is insufficient to establish *Monell* liability. *Bond v. Arrowhead Regional Med. Ctr.*, No. ED CV 11-2049-DDP (PLA), 2015 WL 509823, at *20 (C.D. Cal. Feb. 5, 2015) ("plaintiff may not hold a government entity liable under § 1983 unless he can show that his injury arose from the execution of a government's policy or custom, not an official's failure to follow the entity's policies or procedures" (citing *Monell*, 436 U.S. at 694)).

For all these reasons, the Court **GRANTS** the County's motion and **DISMISSES** Plaintiffs' *Monell* claim.

### CONCLUSION

In sum, the Court **GRANTS** Defendants' motions to dismiss. (Doc. Nos. 5, 13.) The Court **DISMISSES** the complaint **WITHOUT PREJUDICE**. (Doc. No. 1.) Capp must file an amended complaint, curing the deficiencies noted herein, within ***fourteen days of this order's issuance***. Failure to do so will result in dismissal of this action with prejudice.

**IT IS SO ORDERED.**

Dated: April 19, 2017

Hon. Anthony J. Battaglia
United States District Judge