UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN C. CAPP, On Behalf Of Himself; N.C., A Minor By And Through Their Guardian Ad Litem; J.C., A Minor, By And Through Their Guardian Ad Litem,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO; SAN DIEGO HEALTH AND HUMAN SERVICES AGENCY; KATHY JACKSON; BOB PROKESCH; JOHANNA FIRTH; DOES 1 to 50, Inclusive,<br><br>Defendants. | Case No.: 16-CV-2870-AJB-MDD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>(Doc. No. 20) |

Presently before the Court is a motion to dismiss the amended complaint for failure to state a claim filed by Defendants Johanna Firth ("Firth"), Kathy Jackson ("Jackson"), Bob Prokesch ("Prokesch"), and the County of San Diego ("County") (collectively, "Defendants"). (Doc. No. 20.) Plaintiffs Jonathan C. Capp ("Capp"), N.C., and J.C. (collectively, "Plaintiffs") oppose the motion. (Doc. No. 22.) Having reviewed the parties'

1

moving papers and controlling legal authority, the Court finds the matter suitable for decision on the papers and without oral argument pursuant to Local Civil Rule 7.1.d.1. Accordingly, the motion hearing date currently set for ***August 10, 2017, at 2:00 p.m. in Courtroom 4A*** is hereby **VACATED**. For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion. The Court **DISMISSES WITH PREJUDICE** the 42 U.S.C. § 1983 claim and the *Monell* claim to the extent they are predicated on a purported violation of Plaintiffs' Fourth and Fourteenth Amendment rights.

## BACKGROUND

The instant dispute arises from allegations that Capp emotionally abused his children, had a substance abuse problem, and drove his children while under the influence of alcohol. The County Health and Human Services Agency ("Agency") received these allegations from an anonymous third party, but Capp suggests his ex-wife's parents reported these allegations to the County. (Doc. No. 19 ¶¶ 20, 33, 36.)[1]

Upon receiving these allegations, the County sent social worker Firth to interview N.C. and J.C. at school without Capp's consent. (*Id.* ¶ 18.) Firth also interviewed Capp at his home on August 26, 2015, after leaving her business card there on August 20, 2015. (*Id.* ¶¶ 16–17.) On August 28, 2015, Capp's ex-wife's attorney informed Capp that his ex-wife was seeking full custody of N.C. and J.C., and that Firth recommended the ex-wife create a written agreement that she would file an emergency custody order because the children felt unsafe in his care. (*Id.* ¶¶ 24–25; Doc. No. 19-1 at 9.) Capp's ex-wife filed an ex parte motion on August 31, 2015, based on Firth's recommendation, but the family court denied the motion on September 2, 2015, and dismissed her motion to modify custody in her favor. (Doc. No. 19 ¶¶ 27–28; *see* Doc. No. 19-1 at 6–9.)

After receiving the ex parte application, Capp contacted Jackson, an Agency supervisor, who assured Capp that procedures would be followed and the case against him

---

[1] The Court cites to the blue CM/ECF-generated document and page numbers located at the top of each page.

closed. (Doc. No. 19 ¶ 30.) On September 8, 2015, social worker Prokesch interviewed Capp regarding the allegations. (*Id*. ¶ 32.)

During the span of this investigation, N.C. and J.C.'s maternal grandparents kept Capp from seeing N.C. and J.C. and physically prevented him from picking them up from school. (*Id*. ¶¶ 35, 37.) On September 24, 2015, the family court prohibited the maternal grandparents from seeing the children and nearly revoked the ex-wife's custody. (*Id*. ¶¶ 39–40.) The family court also confirmed that the Agency determined the emotional abuse allegations against Capp were inconclusive, which Jackson, Prokesch, and Firth had confirmed on September 18, 2015. (*Id.* ¶¶ 41–42.) On October 15, 2015, Capp received a notification from Firth that the child abuse investigation against him was officially closed, but that he had been subsequently placed on the Child Abuse Central Index ("CACI"). (*Id*. ¶¶ 43–44; Doc. No. 19-1 at 22.)

Capp called the Agency to protest his CACI listing, and Ana Daugherty ("Daugherty"), a policy analyst with Child Protective Services ("CPS"), informed Capp she was investigating his complaint. (Doc. No. 19 ¶¶ 47, 49.) On October 30, 2015, Daugherty informed Capp that she would recommend he be taken off the CACI. (*Id.* ¶ 51.) On November 23, 2015, Daugherty told Capp the allegations against him were downgraded to "unfounded" with the exception of the emotional abuse allegation against N.C., which was determined inconclusive. (*Id*. ¶¶ 52–53; Doc. No. 19-1 at 29.) Daugherty also informed Capp that he was never actually placed on the CACI and that the mistake was due to a clerical or administrative error, of which he received written confirmation on February 2, 2016. (Doc. No. 19 ¶¶ 54–55.) On February 25, 2016, social worker Stephanie Ackroyd ("Ackroyd") interviewed N.C. and J.C. at school, again without Capp's consent. (*Id.* ¶ 74.)

Plaintiffs instituted this action by filing the original complaint on November 22, 2016, alleging a violation of their First, Fourth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 against Firth, Prokesch, and Jackson. (Doc. No. 1.) Plaintiffs also alleged municipal liability pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against the County. (*Id.*) Defendants successfully moved to dismiss that

complaint. (Doc. Nos. 5, 13, 18.)

Plaintiffs thereafter filed an amended complaint on May 3, 2017, alleging the same causes of action. (Doc. No. 19.) Defendants filed the instant motion to dismiss on May 17, 2017. (Doc. No. 20.) Plaintiffs filed an opposition, and Defendants replied. (Doc. Nos. 22, 24.) This order follows.

## **LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)[2] tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Plaintiffs must also plead, however, "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true "merely because they are cast in the form of factual allegations." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998).

Where dismissal is appropriate, a court should grant leave to amend unless the

---

[2] All references to "Rule" are to the Federal Rules of Civil Procedure.

plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## DISCUSSION

### I. Violation of Civil Rights Claim: 42 U.S.C. § 1983 and Qualified Immunity

Defendants move for dismissal on the basis that Plaintiffs continue to state no violation of their First, Fourth, or Fourteenth Amendment rights on which to hinge a § 1983 action, and even if they did, Defendants are immune from such claims. (Doc. No. 20-1.) The Court will consider each constitutional violation in turn.

42 U.S.C. § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). "To state a claim under [42 U.S.C.] § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). To act under color of state law, a defendant must exercise "power 'possessed by virtue of state law," and his or her actions were "made possible 'only because the wrongdoer is clothed with the authority of state law.'" *Id*. at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An official's qualified immunity generally turns on the objective legal reasonableness of his actions, which are assessed in light of the clearly established legal rules in place at the time his actions were taken. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quoting *Harlow*, 457 U.S. at 562). A right is "clearly established" if it is "sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.'" *Reichle v. Howards*, 566 U.S. 658,

132 S. Ct. 2088, 2093 (2012) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (internal quotation marks omitted). The Court must therefore decide whether a reasonable officer could have believed that the conduct at issue was lawful, in light of both clearly established law and the information the officer possessed at the time he acted. *See Anderson*, 483 U.S. at 639–41. Qualified immunity is "defeated if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury." *Harlow*, 457 U.S. at 815 (internal quotation marks, emphasis, and alterations omitted).

There are two prongs to the qualified immunity analysis: (1) whether the plaintiff alleged the deprivation of a constitutional right; and (2) whether that right was "clearly established" so as to deny qualified immunity. *See al-Kidd*, 563 U.S. at 735. It is within the district court's sound discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### i. *First Amendment Violation*

Defendants argue Plaintiffs fail to state a First Amendment violation because Plaintiffs do not sufficiently allege facts lending plausibility to the claim that the social workers retaliated against any constitutionally protected activity. (Doc. No. 20-1 at 4.) Plaintiffs retort that the social workers chilled their rights to free speech and that Defendants intentionally and unjustifiably retaliated against Capp even though there was no credible evidence of child abuse by Capp to warrant an investigation. (Doc. No. 22 at 2–5.) In support for their claims, Plaintiffs have added a list of specific requests, comments, and criticisms Capp made to Defendants Firth and the County, as well as Capp's locally elected representatives. (Doc. No. 19 ¶¶ 71–72; Doc. No. 19-1 at 2–3.)

To state a retaliation claim under the First Amendment, Plaintiffs must allege that (1) they were engaged in a constitutionally protected activity; (2) Defendants' actions would chill a person of ordinary firmness from continuing to engage in the protected

activity; and (3) the protected activity was a substantial or motivating factor in Defendants' conduct. *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (quoting *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)).

In its order dismissing the original complaint, the Court found that Plaintiff's First Amendment claim failed because Plaintiffs did not identify any constitutionally protected activity subject to Defendants' purported retaliation. (Doc. No. 18 at 6–7.) In the amended complaint, Plaintiffs have now provided a list of specific instances of constitutionally protected activity. The listed verbal criticisms clearly qualify as "speech." *See Ford v. City of Yakima*, 706 F.3d 1188, 1192–93 (9th Cir. 2013) ("'[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.' While an individual's critical comments may be 'provocative and challenging,' they are 'nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.'" (quoting *City of Houston v. Hill*, 482 U.S. 451, 461 (1987))). Accordingly, the Court finds that Plaintiffs have satisfied the first prong of the retaliation claim. (Doc. No. 19 ¶¶ 71–72; Doc. No. 19-1 at 2–3.) The analysis now turns to the remaining two prongs.[3]

Turning to the second prong, the test for whether Defendants' actions would "chill a person of ordinary firmness" from engaging in constitutionally protected activities is generic and objective; it does not require that Capp himself was, or would have been, chilled. *O'Brien*, 818 F.3d at 933. Rather, the test simply inquires "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999)

---

[3] Plaintiffs incorrectly assume that the Court accepted as true that Defendants engaged in retaliatory conduct against Plaintiffs. (Doc. No. 22 at 2.) However, a careful reading of the Court's order dismissing the original complaint reveals that the Court did not decide these matters; rather, it did not consider them, as the failure to meet the first prong of the claim was sufficient, by itself, to dismiss the First Amendment claim. (Doc. No. 18 at 6–7.)

(quoting *Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C. Cir. 1996)). The Ninth Circuit has previously found that a plaintiff can adequately plead a "chilled speech" civil rights claim against government officials by alleging specific retaliatory acts. In *Mendocino Environmental Center*, the Ninth Circuit stated, "A plaintiff 'may not recover merely on the basis of a speculative "chill" due to generalized and legitimate law enforcement initiatives.' However, where a plaintiff 'allege[s] discrete acts of police surveillance and intimidation directed solely at silencing' her or him, a civil rights claim will lie." 14 F.3d at 464 (quoting *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)). Allegations, for example, that federal agents had "pursued baseless investigations" and "supplied false information" against environmental protesters in an effort to stop their advocacy activities were found sufficiently chilling to support a retaliation claim. *Id.*

Here, Plaintiffs allege that Defendants urged Capp's ex-wife to institute ex parte proceedings before the family court in an effort to strip Capp of custody of his children. (Doc. No. 19 ¶ 24.) Plaintiffs further allege that Defendants threatened to institute juvenile proceedings if the ex-wife did not do so. (*Id.*) Plaintiffs allege that Defendants engaged in this conduct in retaliation of Capp's verbal and written criticisms. (*Id.* ¶ 72.) Taking these allegations as true, the Court finds Plaintiffs have sufficiently alleged discrete actions that would chill the speech of the average person. As such, the Court finds the second prong of the retaliation test satisfied.[4]

For the third prong, Plaintiffs must allege a causal connection between the protected activity and Defendants' retaliatory behavior. *O'Brien*, 818 F.3d at 932. In free speech retaliation cases, it is rare that a plaintiff can plead direct evidence of retaliatory intent in a

---

[4] Plaintiffs also allege Defendants retaliated against Capp by placing him on the CACI. (Doc. No. 19 ¶ 73(b).) As with the original complaint, the amended complaint's allegations demonstrate that while Capp was informed he had been listed on the CACI, due to a clerical error, that had not actually occurred. (*Id.* ¶ 54.) Because the Court does not rely on Defendants' proffered declaration in coming to this conclusion, the Court **DENIES** Defendants' request for judicial notice. (Doc. No. 20-2.)

complaint. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). As a result, a plaintiff can sufficiently allege a causal connection by pleading facts that the defendants knew about plaintiffs' speech, as well as at least one of the following three circumstances: (1) the protected action and the allegedly retaliatory conduct were proximate in time; (2) the defendant expressed opposition to the plaintiff's speech, either to the plaintiff directly or to third parties; or (3) the defendant's proffered explanation for his actions is "false and pretextual." *See Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751–52 (9th Cir. 2001) (citations omitted); *see also Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 870–71 (9th Cir. 2016) (finding allegation that retaliatory conduct was temporally proximate to constitutionally protected speech sufficiently identified defendant's retaliatory intent and causal connection); *Watison*, 668 F.3d at 1114 ("allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal").

In their amended complaint, Plaintiffs allege that Defendants engaged in a "wholly premeditated campaign of retaliation" against Capp and his children in response to Capp's exercise of his constitutional rights. (Doc. No. 19 ¶ 4.) In support of this assertion, Plaintiffs allege that Defendants' retaliatory behavior started within two days of Capp's conversation with Firth, beginning with Firth's ex parte hearing recommendation. (*See id.* ¶¶ 72–73; *see also id.* ¶¶ 17, 24.) Prior cases establish that even a months-long gap between protected activity and retaliatory conduct can suffice to plead proximate connection. *Allen v. Iranon*, 283 F.3d 1070, 1078 (9th Cir. 2002) ("[A]n eleven-month gap in time is within the range that has been found to support an inference that [a] . . . decision was retaliatory."). Taking Plaintiffs' allegations as true, the Court finds Plaintiffs have sufficiently pled a causal connection and thus have satisfied the third prong. *See Rayford v. Omura*, 400 F. Supp. 2d 1223, 1232 (D. Hawaii 2005) (finding plaintiff set forth sufficient facts that defendants acted to deter plaintiff's speech based, in part, on allegation that defendants' purported retaliatory conduct occurred within eleven days). Accordingly, their § 1983 claim is sufficiently stated to the extent it is predicated on a First Amendment violation.

Defendants argue that even if Plaintiffs properly state a First Amendment retaliation claim, the social workers are entitled to qualified immunity due to the lack of an established right in the social worker context. (Doc. No. 20-1 at 5.) Plaintiffs respond by citing retaliation cases involving police and corrections officers where such a right has been found to exist. (Doc. No. 22 at 3.) Defendants reply that Plaintiffs do not cite any First Amendment retaliation cases involving social workers and that this dearth of case law defeats any claim that qualified immunity does not apply. (Doc. No. 24 at 3.)

While the Supreme Court does "not require a case directly on point" in order for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law, the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (citation omitted). Plaintiffs' proffered cases where qualified immunity did not apply include social workers who used perjured testimony in a child custody matter, *Hardwick v. Cty. of Orange*, 844 F.3d 1112 (9th Cir. 2017), and a police officer who pulled over a driver without reason beyond the driver's rude gestures, *Duran v. City of Douglas*, 904 F.2d 1372 (9th Cir. 1990). In these cases, the unlawfulness of the defendants' actions was clear in the eyes of the Court; the defendants in the above cases knew or should have known their actions were unlawful. *See Hardwick*, 844 F.3d at 1118–19; *Duran*, 904 F.2d at 1378.

Here, Defendants are accused of retaliatory behavior in the course of an investigation of child abuse allegations. Plaintiffs allege that Capp made comments critical of Firth and sent a critical letter to the County. (Doc. No. 19 ¶¶ 71–72.) Plaintiffs further allege that Defendants responded by coercing Capp's ex-wife to strip Capp of custody of his children through an ex parte hearing. (*Id.* ¶¶ 72–73, 79.) While there is no precedent directly on point that allows First Amendment retaliation claims to go forward against social workers who have taken the above actions, "officials can still be on notice that their conduct violates

established law even in novel factual circumstances." *Hope*, 536 U.S. at 741. Taking Plaintiffs' allegations as true, the Court finds dismissal of the amended complaint on the basis of qualified immunity inappropriate. Reasonable social workers in Defendants' positions know or should know that baselessly taking action that could lead to a child being wrongfully removed from its parents would rule afoul of the First Amendment. *See Rayford*, 400 F. Supp. 2d at 1234 (denying motion to dismiss and finding social worker defendants not entitled to qualified immunity on plaintiff's First Amendment retaliation claim).

Accordingly, the Court finds Defendants are not entitled to qualified immunity as to a purported violation of Plaintiffs' First Amendment rights at this juncture. The Court therefore **DENIES** Defendants' motion to dismiss Plaintiffs' § 1983 claim to the extent it is predicated on a First Amendment violation as to Defendants Prokesch and Firth.

As to Jackson, Defendants separately ask the Court to dismiss all claims alleged against her because there are no facts alleged that suggest she took any action that violated Plaintiffs' constitutional rights. (Doc. No. 20-1 at 9.) Plaintiffs do not respond to this assertion. The allegations against Jackson are simply that she assured Capp "she would make sure that all appropriate procedures would be followed," she signed off on a later stating the original referral for emotional abuse was inconclusive, and she ignored Capp's phone call.[5] (Doc. No. 18 ¶¶ 30–31, 42, 48.) Because the allegations against Jackson are devoid of any assertion that she undertook action that would chill the speech of the average person, the Court **DISMISSES** the § 1983 action as to Jackson. Given the allegations contained in both iterations of the complaint pertaining to Jackson are virtually identical, this dismissal is **WITH PREJUDICE**.

//

---

[5] Plaintiffs also allege that Jackson placed Capp on the CACI, (Doc. No. 18 ¶ 73(b)), but given that Capp was never actually placed on the CACI, this allegation plays no role in the Court's analysis.

11

### ii. Fourth and Fourteenth Amendment Violations

Defendants again seek dismissal of Plaintiffs' Fourth and Fourteenth Amendment claims. (Doc. No. 20-1 at 5–7.) Plaintiffs respond, asserting that their Fourth Amendment claim is sufficiently stated on the basis of *Greene v. Camreta*, 588 F.3d 101, 1016 (9th Cir. 2009). (Doc. No. 22 at 5.) Plaintiffs further assert that they have sufficiently alleged a Fourteenth Amendment claim, arguing that the Court's interpretation of the original complaint and reliance on *Buckheit v. Dennis*, No. C 09-5000 JCS, 2012 WL 1166077 (N.D. Cal. Apr. 6, 2012), is incorrect. (*Id.* at 6–7.)

"Under the law of the case doctrine, 'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.'" *Gallagher v. San Diego Unified Port Dist.*, 14 F. Supp. 3d 1380, 1389 (S.D. Cal. 2014) (quoting *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998)). However, the doctrine "should not be applied woodenly in a way inconsistent with substantial justice." *United States v. Miller*, 822 F.2d 828, 832 (9th Cir. 1987). Accordingly, the Court has the discretion to depart from the law of the case if "(1) [t]he first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would result." *Gallagher*, 14 F. Supp. 3d at 1389 (citing *Cuddy*, 147 F.3d at 1114). "Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).

In its order dismissing Plaintiffs' original complaint, the Court found qualified immunity shielded Defendants from liability on Plaintiffs' Fourth Amendment claim because of a lack of existing precedent clearly establishing the social workers' interviews of N.C. and J.C. at school as acts that violate the Constitution. (Doc. No. 18 at 9.) The Court refused to rely on *Greene* because the Supreme Court's vacatur of the Ninth Circuit's Fourth Amendment ruling and qualified immunity analysis. (*Id.* at 8–9.) The Court further found Plaintiffs failed to state a Fourteenth Amendment claim because they failed to

identify a familial right with which Defendants had disrupted and failed to identify a right or status that had been removed due to Capp's purported listing on the CACI. (*Id.* at 10–11).

In opposing the instant motion to dismiss, Plaintiffs essentially argue that the foregoing holdings are wrong. (Doc. No. 22 at 5–6.) Yet, Plaintiffs do not dispute that the children were never removed from Capp's custody. Nor do they identify anything other than an injury to Capp's reputation stemming from his purported CACI listing. While Plaintiffs list possible effects Capp *could* endure from having been listed on the CACI (if he had in fact been listed), Plaintiffs do not assert that Capp has *actually* suffered any of these injuries. (*See* Doc. No. 19 ¶ 73(d).) They do not allege, for example, that Capp was actually prevented from accompanying the children on a school field trip, terminated from his coaching or refereeing positions, or adversely affected during custody proceedings. (*See id.*)

Plaintiffs claim Capp's "status as a citizen with no negative or derogatory record was extinguished . . . ." (Doc. No. 22 at 7.) However, Plaintiffs provide no support for the position that this is the type of status alteration the Supreme Court contemplated in *Paul v. Davis*, 424 U.S. 693 (1976). Absent such authority, this appears to be just another way of saying Capp's reputation was harmed. As the Court explained in its prior order, harm to reputation alone is insufficient to state a Fourteenth Amendment violation. (Doc. No. 18 at 10–11.)[6]

In short, simply disagreeing with the Court's prior conclusions fails to establish any of the conditions that would permit the Court to depart from the law of the case. *See Alexander,* 106 F.3d at 878. As such, the Court declines to do so. Because Plaintiffs' Fourth and Fourteenth Amendment claims are deficient for the same reasons that resulted in their dismissal from the original complaint, the Court **GRANTS** Defendants' motion to dismiss

---

[6] And, of course, there is the issue that Plaintiffs allege Capp was not actually listed on the CACI. (Doc. No. 19 ¶ 54; *see* Doc. No. 1 ¶ 54.)

and **DISMISSES WITH PREJUDICE** the § 1983 claim to the extent it is predicated on a violation of Plaintiffs' Fourth and Fourteenth Amendment rights.

## II. Monell *Claim: Municipal Liability*

Defendants move to dismiss Plaintiffs' *Monell* claim, arguing the amended complaint fails to show that Defendants violated Plaintiffs' constitutional rights, which is the crux of *Monell* liability. (Doc. No. 20-1 at 8.) Furthermore, Defendants allege that Plaintiffs continue to rely inappropriately on *Greene v. Camreta* as the basis for purported constitutional violations. (*Id.*) Plaintiffs oppose the motion, again emphasizing *Greene v. Camreta*, incorrectly claiming that the Court has already accepted that the interviews of N.C. and J.C. constituted a seizure and that the list of standard interview techniques in the amended complaint is sufficient to particularize the policies that constituted the violation. (Doc. No. 22 at 5; *see* Doc. No. 19 ¶¶ 74, 83.) Defendants retort that Plaintiffs' list simply alleges that the County has a policy for interviewing children at school without parental consent, and there is no precedent establishing that such interviews violate a person's constitutional rights. (Doc. No. 24 at 5–6.)

Municipalities, their agents, and their supervisory personnel may be held liable for deprivations of constitutional rights resulting from their formal policies or customs. *Monell*, 436 U.S. at 691–95. In order to establish liability for municipalities under *Monell*, a plaintiff must plead the following four elements: "(1) that [the plaintiff] possessed a constitutional right of which []he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)). "In this circuit, a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988) (quoting *Shah v. Cty. of Los Angeles*, 797 F.2d 743, 747

(9th Cir. 1986)). Notwithstanding this treatment, however, a plaintiff is not absolved of his obligation to meet the plausibility requirements under *Twombly*. *Dougherty*, 654 F.3d at 900.

Plaintiffs' *Monell* claim fails at the first element. While Plaintiffs assert that the social workers interviewed the children "[i]n accordance with the policies and practices of the Defendant County," (Doc. No. 19 ¶¶ 74–75), and Plaintiffs conceivably allege the County's policies amounted to deliberate indifference to Plaintiffs' constitutional rights and were the moving force behind the constitutional violations, (*see id.* ¶¶ 84–85, 87), the policies and practices identified, as well as the specific supporting facts alleged, all concern the social workers' interviews of N.C. and J.C. For example, Plaintiffs identify the following conduct to have conformed with the County's policies and practices with which they take issue: "Asking the children to identify their private parts and if they had been sexually abused"; "Asking the children questions relating to drugs and alcohol and especially whether Father had driven them when intoxicated"; and "Questions relating to father's house, tidiness of the house, his temperament and relationship with the children, and his use of corporal punishment[.]" (*Id.* ¶¶ 74–75.) Given that the Court has found Plaintiffs have failed to allege violations of their constitutional rights based on these interviews, Plaintiffs cannot hinge a *Monell* claim against the County on policies dealing with those interviews. *Dougherty*, 654 F.3d at 899 (stating that no *Monell* liability exists absent "facts show[ing] that the [officers'] conduct violated a plaintiff's constitutional rights").

For this reason, the Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiffs' *Monell* claim against the County to the extent it is predicated on the interview of Capp's children. Because this is Plaintiffs' second attempt to state a *Monell* claim, this dismissal is **WITH PREJUDICE**.

## CONCLUSION

In sum, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss. (Doc. No. 20.) The Court **DISMISSES WITH PREJUDICE** the 42

15

16-CV-2870-AJB-MDD

U.S.C. § 1983 claim and the *Monell* claim to the extent they are predicated on a violation of Plaintiffs' Fourth and Fourteenth Amendment rights, as all as the § 1983 claim to the extent it is brought against Jackson. The Court **DENIES** Defendants' motion to dismiss as to Plaintiffs' § 1983 claim to the extent it is predicated on a violation of their First Amendment rights as alleged against Prokesch and Firth.

**IT IS SO ORDERED.**

Dated: August 1, 2017

Hon. Anthony J. Battaglia
United States District Judge