UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jonathan C. Capp, et al.,<br><br>                            Plaintiffs,<br>v.<br>County of San Diego, et al.,<br><br>                            Defendants. | Case No.: 16-cv-2870-AJB-MDD<br><br>**ORDER:**<br>**GRANTING DEFENDANTS'**<br>**MOTION FOR RECONSIDERATION**<br>**(Doc. No. 26), and**<br><br>**DENYING AS MOOT CAPP'S**<br>**MOTION TO CERTIFY CLAIMS**<br>**FOR INTERLOCUTORY APPEAL**<br>**(Doc. No. 29).** |

     Defendants move for reconsideration of this Court's August 1, 2017 order denying defendants qualified immunity under Federal Rules of Civil Procedure 59(e) and 60(b). (Doc. No. 26.) Because the Court's order contains legal error, the Court **GRANTS** defendants' motion for reconsideration. Defendants are entitled to qualified immunity on Capp's first amendment retaliation claim. Capp also requests the Court amend its prior order so that the dismissed claims are eligible for immediate interlocutory appeal. (Doc. No. 29.) However, Capp notes his motion will be mooted if the Court grants defendants' reconsideration motion. Thus, the Court also **DENIES AS MOOT** Capp's motion.

1

## I. BACKGROUND

Plaintiff Jonathan Capp and his children, N.C. and J.C., filed a 42 U.S.C. § 1983 complaint against the County of San Diego, Johanna Firth, and Robert Prokesch. A detailed factual background was included in the Court's August 1, 2017 order. (Doc. No. 25.) The Court incorporates that history as though set out here and will only highlight details pertinent to the instant motion. After Firth left her business card at Capp's home on August 20, 2015, she met with Capp six days later. (Doc. No. 19 at 5.) Unhappy with how the meeting went, Capp wrote a letter to Child Welfare Services the same day, complaining about his exchange with Firth and the child abuse allegations against him. (*Id.* at 5–6; 19-1 at 2–3.) On August 28, Capp's children's mother stated CPS advised her to file an ex-parte motion for custody, which she did three days later. (Doc. Nos. 19 at 6; 19-1 at 6.) After the petition was denied on September 2, Capp contacted his local assemblyman and a Protective Services Program manager regarding his continued concerns about his case. (Doc. Nos. 19 at 7; 19-1 at 12.) They both assured him the proper procedures would be followed. (Doc. No. 19 at 7.) On September 9, Capp received a letter from a regional deputy director of the Health and Human Services Agency also assuring him procedures would be adhered to. (Doc. Nos. 19 at 7–8; 19-1 at 12.) Prokesch also interviewed Capp at the HHSA. (Doc. No. 19 at 7–8.)

Regarding the retaliation claim, Capp alleged that Firth and Prokesch "coerced" the mother to file the ex-parte petition for custody because of "their desire to retaliate against" Capp "and they would not have otherwise acted as such but for the activity of the father as described above [noting the criticisms Capp lodged through letters, phone calls, and during conversations with defendants]." (Doc. No. 19 at 15.) In the Court's previous order, the Court found Capp adequately stated a first amendment retaliation claim and that Firth and Prokesch were not entitled to qualified immunity. (*Id.* at 9, 11.) Defendants now motion the Court to reconsider and reverse its decision citing two intervening cases regarding qualified immunity. (Doc. No. 26 at 2–3.) Defendants also point to three other cases in the

Southern District which have reversed prior findings denying qualified immunity on the same grounds. (*Id.* at 8.)

## II. LEGAL STANDARDS

The district court should not grant a reconsideration motion unless (1) there is newly discovered evidence, (2) it committed clear error or the decision was manifestly unjust, or (3) there was an intervening change in controlling law. *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). "Although Rule 59(e) permits a district court to reconsider and amend a previous order, the rule offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotation marks and citation omitted); *see also Global View Ltd. Venture Capital v. Great Cent. Basin Exploration, LLC*, 288 F. Supp. 2d 482, 483 (S.D.N.Y. 2003) ("The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995))).

"In determining whether an officer is entitled to qualified immunity, we consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *C.V. by & through Willegas v. City of Anaheim*, 823 F.3d 1252, 1255 (9th Cir. 2016) (quoting *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014.)

## III. DISCUSSION

Defendants generally argue the Court erred in denying Firth and Prokesch qualified immunity because the Court failed to abide by the Supreme Court's and Ninth Circuit's finely-tuned jurisprudence on the matter. This year, the higher courts have seen an indiscriminate number of qualified immunity cases which have sharpened the contours of the doctrine. *See White v. Pauly*, 137 S. Ct. 548 (2017); *S.B. v. Cnty of San Diego*, 864 F.3d 1010 (9th Cir. 2017); *Shafer v. Cnty of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017);

*Sharp v. Cnty of Orange*, 871 F.3d 901, 910 (9th Cir. 2017). *White* chastised how lower courts have analyzed the clearly established prong of the qualified immunity analysis—a censure the Ninth Circuit has heeded. In *White*, the Supreme Court admonished lower courts, stating that "[i]n the last five years, this Court has issued a number of opinions reversing federal courts in qualified immunity cases." *White*, 137 S. Ct. at 551. The Court exasperatingly continued, "[t]oday, it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *Id.* at 552. *White* established that the keystone to qualified immunity cases is identifying "a case where an officer acting under similar circumstances" was held to have violated the law. *Id.* The Supreme Court reversed the lower court's ruling, finding officer White was indeed entitled to qualified immunity.

Four months later, the Ninth Circuit interpreted *White*. In *S.B.*, the Court "acknowledge[d] the Supreme Court's recent frustration with failures to heed its holdings" as it had "repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *S.B.*, 864 F.3d at 1015. In reversing a district court's denial of qualified immunity, the Ninth Circuit stated "[w]e hear the Supreme Court loud and clear. Before a court can impose liability" on a defendant, "we must identify precedent" as of the day of the alleged misconduct that put the defendant "on clear notice" that their actions were unconstitutional. *Id.* Courts must "identify a case where an officer acting under similar circumstances as [defendant] was held to have violated" the law. *Id.* (citing *White*, 137 S. Ct. at 552). In *S.B.*, the Court could not locate such precedence and granted qualified immunity.

In the reply brief, defendants cite two additional Ninth Circuit cases decided in August and September of this year. In *Shafer*, the Court held "[f]or a right to be clearly established, case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Shafer*, 868 F.3d at 1117. In *Sharp*, the Ninth Circuit stated, "[t]he Supreme Court has repeatedly instructed that we

4

examine 'whether the violative nature of particular conduct is clearly established' by controlling precedent, not whether the conduct violates a general principle of law." *Sharp*, 871 F.3d at 910 (citing *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). The law of the Supreme Court and the Circuit is unequivocal—there must be a case, or a set of cases, which would give an actor notice that his or her specific actions are unlawful.

Defendants argue, then, that "no appellate case has held social workers liable for retaliating against a plaintiff's First Amendment rights under similar circumstances as this case. In light of *White* and *S.B.*, the Court should grant Defendants qualified immunity on the First Amendment retaliation claim." (Doc. No. 26 at 2.) Notably, Capp does not cite any authority directly on point that would give a reasonable social worker notice that his actions in this case—recommending a party file an ex-parte motion for custody after the accused parent complained about the investigation—violated clearly established law. In the Court's prior order, the Court found that Capp sufficiently pled a first amendment retaliation claim, but that defendants were not entitled to qualified immunity because they "know or should know that baselessly taking action that could lead to a child being wrongfully removed from its parents would rule [sic] afoul of the First Amendment." (Doc. No. 25 at 11.) The Court immediately prefaced this conclusion by stating, "[w]hile there is no precedent directly on point that allows First Amendment retaliation claims to go forward against social workers who have taken the above actions, 'officials can still be on notice that their conduct violates established law even in novel factual circumstances.'" (Doc. No. 25 at 10.)

Capp's only defense, that "[t]hose exercising police and/or administrative power have long been on notice that it is unlawful to retaliate against someone exercising their freedom of speech," is unavailing; especially in light of *White*'s warning and *Sharp*'s holding that violating mere general principles of law, without more, fails to meet the standard. (Doc. No. 28 at 4.) This case is not the classic retaliation case one would instantly recognize as unlawful, like the actions of the officer in *Ford*—the first of three Ninth Circuit cases Capp relies on. *Ford v. City of Yakima*, 706 F.3d 1188, 1195 (9th Cir. 2013).

5

In *Ford*, the Court held the officers were not entitled to qualified immunity because officers have been on fair notice since 1990 that it is unlawful to retaliate against someone engaging in protected speech by jailing them. *Id.*

In *Duran*, Capp's second supporting case, the Court held qualified immunity did not apply because the officer stopped and arrested Duran after he made obscene comments and gestures towards the officer, but was not engaged in any unlawful behavior. *Duran v. City of Douglas, Ariz.*, 904 F.2d 1372 (9th Cir. 1990). The Court stated it is well established that officers "may not exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity. Surely anyone who takes an oath of office knows—or should know—that much." *Id.* at 1378. While *Duran*'s holding does point to a more general proposition of what officers ought to know, the Court finds it distinguishable from the case at hand because using one's office or authority to detain an offending, but law-abiding citizen, affronts the very notions of the awesome responsibility officers hold—an obvious abuse. The Court finds *Skoog*, Capp's third supporting case, inapplicable. *Skoog. v. Cnty of Clackamas*, 469 F.3d 1221, 1235 (9th Cir. 2006). In *Skoog*, the Ninth Circuit defined a right as clearly established, but held that the officers were nevertheless entitled to qualified immunity because the right was being established in the opinion, thus, there was no clearly established law when the officers acted.

The Court cannot define retaliation with a high degree of generality or equate a police officer's unmistakable deviations from the law to a social worker's actions under these facts. It is not entirely clear from Capp's complaint that defendants' motives were to punish Capp for exercising his first amendment rights. Firth recommended the mother file an ex-parte petition for custody because he felt the children were unsafe in Capp's presence. Moreover, the time span between Capp writing the first letter to CWS and Firth's recommendation to the mother is only two days. Although the mother acknowledged awareness of the letter in her petition—which was filed an additional three days later—the complaint fails to definitively tie Firth's knowledge of the letter to his recommendation. A

6

social worker's job is to make recommendations when they fear a minor might be in danger—thus it appears to this Court that Firth may have been simply doing her job.

However, taking Capp's allegations as true, even if defendants' actions were retaliatory, there was still no clearly established law at the time denoting defendants' specific actions in this case as unlawful. No precedence exists which would have put defendants on notice that their actions violated a clearly established law. Thus, the Court finds qualified immunity was wrongly denied and **GRANTS** defendants' motion for reconsideration. Because qualified immunity now attaches, both Firth and Prokesch are dismissed from the first amendment retaliation claim only.

## IV. CONCLUSION

The Court **GRANTS** defendants' motion for reconsideration, holding there was no clearly established law giving defendants notice their behavior was prohibited. (Doc. No. 26.) Defendants Firth and Prokesch are entitled to qualified immunity on Capp's first amendment retaliation claim. Because the Court grants the reconsideration motion, Capp's motion for interlocutory appeal is **DENIED** as moot. (Doc. No. 29-1 at 2, fn 1.)

Capp's § 1983 claims under the Fourth Amendment and Fourteenth Amendment, as well as his *Monell* claim were denied in the Court's previous order, leaving only the First Amendment retaliation claim. (Doc. No. 25.) Because the Court is now granting defendants' qualified immunity as to that claim, all Capp's claims have been resolved by dismissal and this case is now dismissed in its entirety. The Court **DIRECTS** the Court Clerk to close Capp's case.

Dated: December 28, 2017

Hon. Anthony J. Battaglia
United States District Judge